## Indiana Fibre Products Company. v. Cyclone Manufacturing Company.

[No. 11,591. Filed March 20, 1924. Rehearing denied June 11, 1924. Transfer denied October 10, 1924.]

1. Corporations.—*Authority of Superintendent.—Collection for Goods Sold.*—In an action for price of goods sold, a finding that plaintiff's agent who sold the goods to the defendant was a "superintendent" of plaintiff's business, and not merely a factory superintendent, and that he had authority to collect invoices for goods sold to the defendant, was proper under the

evidence showing that plaintiff treated him as a general superintendent, a "superintendent" being one who superintends or has the oversight of and charge of something, with the power of direction, and is synonymous with manager.   p. 691.

2.   PRINCIPAL AND AGENT.—*Liability of Principal.—How Determined.*—The liability of a principal for the acts of his agent is not determined solely by the authority actually given to the agent, but the principal will be bound as if he had conferred the authority which a third party dealing with the agent was justified in believing to have been given to the agent.   p. 692.

3.   PRINCIPAL AND AGENT.—*Authority of Agent to Bind His Principal.*—In order for the acts of agent to bind his principal, either express or implied authority must have been given by the principal or there must be an appearance of authority caused by the principal, and the agent must have acted within the scope of such authority.   p. 692.

4.   PRINCIPAL AND AGENT.—*Payment to Agent by Check.*—When an agent has apparent authority to make a collection for his principal, and there is nothing in the transaction to put the debtor on notice that the agent is exceeding his authority, a payment may be made by check payable to the agent as such. p. 693.

5.   PRINCIPAL AND AGENT.—*Dealings with Agent.—One of Two Innocent Persons Must Suffer Loss.*—Where the superintendent of a manufacturing company was clothed by it with apparent authority to collect for goods sold, and converted to his own use the checks given to him in payment for such goods, the principle applies that when one of two innocent parties must suffer a loss, the loss should fall on the principal who armed the agent with apparent authority to obtain advantage of the person with whom he deals.   p. 693.

6.   PRINCIPAL AND AGENT.—*Dealings with Agent.—One of Two Innocent Persons Must Suffer Loss.*—Where the superintendent of a manufacturing company was clothed by it with apparent authority to collect for goods sold, and converted to his own use the checks given to him in payment for such goods, the authority of the agent must depend, in so far as it involves the rights of innocent third persons who have relied thereon, on the character of the authority apparently bestowed on the agent, and not upon the instructions given by the principal, as the principal is bound to third persons who have relied thereon, in ignorance of any limitations or restrictions, by the apparent authority he has given to the agent, and not by the actual or implied authority.   p. 693.

7.   PRINCIPAL AND AGENT.—*Liability of Principal for Acts of Agent.—"Superintendent" of Business.—Collection for Goods*

*Sold.*—Where an agent of a manufacturing company, designated by it as "superintendent", was given apparent authority to collect for goods sold, an explanation by him that the company had not included in the invoice presented by him for collection all of the goods shipped, on account of regulations by the government during the war, was not so unusual that it could be said, as a matter of law, that the buyer, for that reason, made payment by check to the superintendent's order at its peril.    p. 694.

From Miami Circuit Court; *Albert Ward,* Judge.

Action by the Indiana Fibre Products Company against the Cyclone Manufacturing Company for a balance due for goods sold and delivered. From a judgment for defendant, the plaintiff appeals. *Affirmed.*

*Albert H. Cole* and *Gus S. Condo,* for appellant.

*Edward E. Eikenberry, Guy R. York* and *Plummer & Plummer,* for appellee.

McMahan, J.—Complaint by appellant to recover for merchandise manufactured by appellant and sold to appellee. Appellee filed an answer in three paragraphs, the first being a general denial, the second payment and the third estoppel. A demurrer to the third paragraph of answer being overruled, a reply of general denial closed the issues. The cause was tried by jury and resulted in a verdict and judgment in favor of appellee. In connection with the general verdict, the jury answered certain interrogatories. At the proper time appellant orally moved the court to require the jury to more fully answer interrogatories Nos. 12, 13 and 14, "for the reason that the answers are not fact answers." This motion as well as a motion for a new trial being overruled, judgment was rendered for appellee.

The errors assigned are that the court erred: (1) in overruling the demurrer to the third paragraph of answer; (2) in overruling appellant's separate and several motion to require the jury to more fully answer each of the interrogatories Nos. 12, 13 and 14; (3) in

overruling appellant's motion for judgment on interrogatories and answers thereto; and (4) in overruling its motion for a new trial.

It appears from the pleadings, the answers of the jury to the interrogatories and from the evidence that appellee paid E. C. Cann, who was appellant's superintendent, the amount due appellant by two checks, one check being for $1,334.56 payable to "E. C. Cann, superintendent Indiana Fibre Products Company", and one for $13.72 payable to "E. C. Cann"; that Cann received the cash on these checks and converted the same to his own use. The result of this appeal depends upon the authority or apparent authority of E. C. Cann to make the collection from appellee. Each of the assignments of error relates to this question. We shall therefore consider them together.

Appellant owned and operated a factory at Marion, Indiana, where it manufactured fibre and corrugated paper boxes or containers used in shipping merchandise. Appellee owned and operated a plant at Urbana, Indiana, where it manufactured certain goods and products which were shipped by freight and otherwise to its customers. The president of appellee company owned and conducted another business under the name of Cyclone Seeder Company. The business of appellee was separate and distinct from that of the seeder company, but the businesses of both were conducted from one and the same office.

In February or March of 1918, E. C. Cann called at the office of appellee company, and, in a conversation with Dr. Speicher, the president of appellee, who, as stated, was the sole proprietor of the seeder company, he informed Mr. Speicher that appellant was manufacturing fibre boxes and was interested in furnishing them to Mr. Speicher for his business. Mr. Speicher at this time informed Mr. Cann that he would be in the market

686    APPELLATE COURT OF INDIANA,

Indiana Fibre Product Co. *v.* Cyclone Mfg. Co.—81 Ind. App. 682.

later on for a carload of boxes. At the request of Mr. Cann, Mr. Speicher promised to write to appellant later about the matter, which he did, and on April 9, 1918, appellant wrote a letter to the seeder company to the effect that the writer of the letter would call a few days later to take up the question of furnishing the boxes. This letter was signed, "Indiana Fibre Product Co., per E. C. Cann, superintendent." Following this letter, Mr. Cann called at the office of appellee and the seeder company and while there was asked whether the goods manufactured by appellee could be shipped in boxes manufactured by appellant. Mr. Cann said he thought they could, and took with him to appellant's factory three poultry coops made by appellee, each of which was to be packed in one of the fibre boxes manufactured by appellant and to be shipped and returned to appellee in order to demonstrate that the boxes could be used for that purpose.

Appellant packed the three coops in boxes and shipped them as directed. A great many letters were thereafter exchanged between the parties concerning the size of boxes to be made for appellee and the seeder company as they had to be made specially to fit the articles manufactured by the parties. Both the seeder company and appellee gave orders for boxes during the summer of 1918, and paid for them by checks made payable to appellant and sent to appellant by mail. These checks were received by appellant, and were indorsed as follows: "For deposit only with The Marion National Bank, Marion, Ind. to the credit of Indiana Product Co. G. A. Bell, Pres." All of the letters written by appellant to appellee and the seeder company were signed "Indiana Product Co. Per E. C. Cann, Superintendent" or "Indiana Fibre Product Co. E. C. Cann," with the exception of two, one of which, dated July, 1918, notified appellee that certain sample boxes

were being shipped, and quoting prices.   This letter was signed "Indiana Fibre Products Co., Sales Manager, A. W. Barrows."

The other letter was dated October 6, 1918, that being Sunday.  It was written in longhand, on the regular letterheads of appellant and signed "E. C. Cann."   This letter, omitting the formal parts, reads as follows: "Gentlemen:  We are loading your seeder and coop boxes today, and will ship tomorrow, Monday.  When you get the bill for these they will not all be billed to you but all your orders will be in these cars, but could not bill all on this bill for reasons that I will explain to you later.   You can pay this bill in time to take your discount and then you can take care of the next bill when you receive it.   Car C. P. 207132 contains all your seeder boxes and a few of your coop boxes and car L. R. & N. 5542 contains the balance of your coop boxes.

Yours Truly,

E. C. Cann."

On Sunday October 6, 1918, two carloads of fibre and corrugated paper boxes were loaded by appellant and on the next day were shipped to appellee.  The seeder company had placed an order for boxes with appellant and these boxes were placed in one of the cars so loaded and shipped to appellee with the boxes which had been ordered by appellee.  On October 7, 1918, appellant mailed appellee two invoices covering part of the boxes that day shipped.  One of these invoices was for $910.88 and the other was for $63.85.  Appellee mailed a check to appellant in payment of these invoices in time to take advantage of the discount.  On October 24, 1918, Mr. Cann called at the office of appellee and presented an invoice for the balance of the boxes shipped to appellee October 7.  This invoice called for $1,228.  He also had with him and presented an invoice

for the goods shipped to the seeder company, amounting to $144. When Mr. Cann presented these invoices, he said that his company had overstepped their allotment or had shipped appellee more goods than the war department allowed them to ship to one customer; that in order that their books would not show this shipment, the goods omitted from the invoice of October 7, had been billed to another one of appellant's customers who had settled with appellant for them and that he, Mr. Cann, wanted to reimburse this customer on his return and suggested that the check be made to "E. C. Cann, Superintendent, Indiana Fibre Products Company." When this request was made, appellee's secretary asked Mr. Speicher if it would be alright to do so and, on being informed that it would, made out and delivered to Mr. Cann appellee's check for $1,344.56 payable to Mr. Cann, superintendent of appellant as requested. In making out this check, the secretary deducted two per cent. thinking appellee was entitled to two per cent. discount, but, on having his attention called to the fact that appellee was entitled to a discount of but one per cent., gave Mr. Cann another check for $13.72. This check was made payable to "E. C. Cann." A few days later, Mr. Cann cashed these checks, converted the proceeds thereof to his own use, and severed his connection with appellant, and his whereabouts since that time is not known. Appellant had no record of the goods sold to appellee and shipped October 7, 1918, and included in the invoices so paid to Mr. Cann, and knew nothing about them having been shipped until sometime in November, 1918, when appellee sent an order to appellant asking that it duplicate the order for boxes which had been covered by one of the invoices so paid to Mr. Cann. When this last order was received and no former order of that character could be found on appellant's books, appellant's president, Mr.

Bell, called at appellee's place of business, and then, for the first time, learned of the shipment and the payment to Mr. Cann. Mr. Bell denied the authority of Mr. Cann to receive such payment and demanded that appellee pay appellant for the goods included in the invoices presented by Mr. Cann. Payment being refused, this action was commenced.

Appellant contends that under the facts as alleged in the third paragraph of answer, as found by the jury in answer to the interrogatories, and as shown by the undisputed evidence, the court erred in overruling the demurrer, in overruling the motion for judgment *non obstante,* and in overruling the motion for a new trial, upon the theory that Mr. Cann was employed to and performed no duties other than to act as factory superintendent and that he had no authority to collect money, or take or receive checks payable to him, or to appellant in payment of debts due from customers of appellant.

Appellee contends that Mr. Cann was a general agent of appellant and, as such, had authority to make collections and, if he was not a general agent in fact, he was clothed with apparent authority to make the collection from appellee.

Before entering into a discussion of the law, it may be well to again state that in all of the dealings between appellant and appellee and the seeder company, Mr. Cann was the only person connected with appellant with whom the latter companies came into contact. Mr. Cann called at appellee's office on three different occasions prior to the time he received the checks heretofore referred to. It appears that when either appellee or the seeder company would write to appellant, their letters would reach Mr. Cann, as he answered all of such letters as called for an answer. Attention has been called to one letter that was not written by him,

and that was a letter from the sales manager stating that certain boxes were being shipped for appellee's inspection.   While the letterheads on which all the letters were written bore the name of Mr. Bell as president and manager, he had nothing to do with the business transactions between appellant and appellee.   The only other place where the name of Mr. Bell appeared was on the back of the checks, where they bore the stamped indorsement of appellant.   There is evidence that when Mr. Bell was at appellee's place of business in November, 1918, he made a statement to the effect that he was away from home a considerable part of the time doing war work and that, during that time, he had turned the management of appellant's business over to Mr. Cann.   Mr. Bell denied having made any such statement.   The jury, however, may have found against him upon this question and we must presume it did. Mr. Bell testified that Mr. Cann was a factory superintendent and had nothing to do with the management of the business or financial affairs of the company.   In this connection, however, it is to be observed there was nothing in the correspondence had with appellant that would indicate that Mr. Cann was simply a superintendent of the factory or production department.   In all the letters, he was designated as superintendent.   A superintendent is defined as one who superintends or has the oversight of and charge of something with the power of direction, and is synonymous with manager.   Century Dictionary.

The Supreme Court of the United States in *Baltimore, etc., R. Co.* v. *Baugh* (1893), 149 U. S. 369, 13 Sup. Ct. 914, 37 L. Ed. 772, which was a negligence case, said: "The directors are the managing agents; their negligence must be adjudged the negligence of the corporation, although they are simply agents.   So when they place the entire management of the corporation in the

hands of a general superintendent, such general superintendent, though himself only an agent, is almost universally recognized as the representative of the corporation, the master, and his negligence as that of the master."

The Supreme Court of Nevada in *Sacalaris* v. *Eureka, etc., R. Co.* (1883), 18 Nev. 155, 1 Pac. 835, 51 Am. Rep. 737, in discussing the powers and authority of the superintendent of a railroad said: "Railway corporations enter so largely into the business transactions of the country that courts should take judicial notice of the authority of their managing officers, upon the same principle that judicial notice is taken of the duties of officers of banks and other agents, whose authority is so generally understood as not to be subject of inquiry. It is a matter of common knowledge that the superintendent of a railroad corporation is empowered to conduct its ordinary business transactions. * * * When an agent is clothed with a title implying general powers, as superintendent, the business public and courts may fairly presume he is what the corporation holds him out as being. Webster says, a superintendent is 'one who has the oversight and charge of something with the power of direction.' An agent having the oversight and charge, with the power to direct, has a general and discretionary power within the scope of his agency." It appears to us that there is some evidence that appellant held Cann out as a person of large power, in the sense in which the word "superintendent" implies large powers.

1. While all the letters written to appellee were written on letterheads which indicated that George A. Bell was the president and general manager of appellant company, they were, with one exception, signed, "Indiana Fibre Product Co., per E. C. Cann, Superintendent." While Mr. Bell testified that Mr. Cann,

was superintendent of the factory department, the correspondence with appellee and the character of the business and the method of its transaction were such as might reasonably have led appellee to infer that Mr. Cann was a general superintendent with general managing power and authority over appellant's business. It may be that, as between appellant and Mr. Cann, the latter was a special agent with limited authority, but he was clothed with such indicia of power and authority, that appellee in doing business with him had the right to infer he was a general superintendent having power to manage and direct appellant's business so that a payment to him would be a payment to appellant.

While the authority of an agent must proceed from his principal and, in ascertaining the extent of the agent's authority, we must look to what has been expressly or impliedly authorized before the act of the agent in question, or to the conduct of the principal after the act in relation thereto by way of ratifying it; it is also true that the liability of the principal for the conduct of the agent is not to be determined solely by the authority actually given to the agent, but that the principal will be bound as if he had conferred the authority which a third party dealing with the agent was justified in believing to have been given to the agent. There must be an appearance of authority caused by the principal, and the agent must have acted within the scope of such authority. *McCaskey Register Co.* v. *Curfman* (1910), 45 Ind. App. 297.

Appellant insists that the receipt of the letter written on Sunday in longhand, together with Mr. Cann's explanation of the reason why the invoice of October 7, was not for the whole of the goods shipped and as to why he wished the check made payable to him was so unusual, extraordinary and questionable as to have put

appellee on guard, and to have required that it should have refused to pay Mr. Cann or to have ascertained from appellant whether Cann was authorized to receive such payment. But, as heretofore stated, we are of the opinion that the evidence is sufficient to sustain the finding that he was clothed with apparent authority to collect.

Appellant also contends that even though it should be held that the evidence is sufficient to show that Mr. Cann was clothed with apparent authority to col-

4-6. lect, he had no authority to accept a check from appellee for that purpose, and that the delivery of a check to Mr. Cann, payable to his order, was not a payment of the debt. Appellant says that if it be assumed that Mr. Cann had implied or apparent authority to receive payment from appellee, appellee would only be justified in paying him in cash or by a check payable to the order of appellant and that it had no authority to give him a check payable to himself, as superintendent of appellant company. As between two innocent persons, one of whom must suffer loss, the loss should fall on the principal who has armed the agent with apparent authority and thus enabled him to obtain the advantage of the person with whom he deals, rather than on the other innocent party, where the agent acts within the apparent scope of his authority, and there is nothing in the transaction to put the other party on notice that the agent is exceeding his authority. *Nat. Bank of San Mateo* v. *Whitney* (1919), 181 Cal. 202, 183 Pac. 789, 8 A. L. R. 298. In the case just cited, a payment made by check which was converted into cash by the agent and embezzled was held to be a payment. See *Griffin* v. *Erskine* (1906), 131 Iowa 444, 109 N. W. 13, 9 Ann. Cas. 1193, where a draft was made payable to an officer of a bank instead of the bank. See, also, *Brown* v. *Grimes* (1921), 74 Ind. App. 655, where

a check was made payable to the principal and delivered to an attorney who had the claim for collection and where the attorney indorsed the check in the name of the principal.    This is one of those cases where one of two innocent parties must suffer because of the betrayal of a trust reposed in another, and where the person most at fault must bear the loss.    In such cases, the question seems to be, not "what was the authority actually given," but what was the party in dealing with the agent justified in believing the authority to be? In cases of this character, the authority of the agent must depend, so far as it involves the rights of innocent third persons who have relied thereon, upon the *character* bestowed, and not upon the instructions given. That is to say, the principal is bound to third persons who have relied thereon, in ignorance of any limitations or restrictions, by the *apparent* authority he has given to the agent, and not by the *actual* or *express* authority.

The evidence in this case is ample to sustain the jury in finding that Mr. Cann was clothed with at least apparent authority to make collection, and we cannot say, as a matter of law, that his explanation as to why appellant had not included in the invoice all of the goods shipped, was so unusual that appellee for that reason made the payment at its peril.

Being of the opinion that substantial justice has been done, we hold there was no reversible error in the giving or refusing to give any of the instructions.    The intervening errors if any in overruling the demurrer to the reply and the motion to require the jury to make its answer to certain interrogatories more specific would not constitute reversible errors.    Neither was there any error in overruling the motion for judgment *non obstante.*

Judgment affirmed.