596 F.2d 1322
 4 Fed. R. Evid. Serv. 1422
 Rose Marie OBERLIN, Administratrix of the Estate of William
W. Oberlin, Deceased, Plaintiff-Appellant,
v.
The MARLIN AMERICAN CORPORATION (formerly The Marlin
Corporation), SCM Corporation, and Melabs, Inc.,
Defendants-Appellees.
 No. 78-1147.
 United States Court of Appeals,
Seventh Circuit.
 Argued Oct. 25, 1978.
Decided April 24, 1979.
 
 Donald A. Schabel, Indianapolis, Ind., for plaintiff-appellant.
 David W. Mernitz, Indianapolis, Ind., for defendants-appellees.
 Before FAIRCHILD, Chief Judge, and CUMMINGS and PELL, Circuit Judges.
 PELL, Circuit Judge.
 
 
 1
 The plaintiff appeals from a final judgment entered against her after the district court directed the verdict for the defendants. On appeal she challenges the district court's finding that the evidence was insufficient to go to the jury and the district court's ruling on various evidentiary issues.
 
 
 2
 This lawsuit arises from an unsuccessful marketing effort several years ago of a product called the Melabs Attache Phone. This was a portable electronic telephone designed to fit within an attache case and to operate on the same airwaves available to fixed telephone installations in vehicles.
 
 
 3
 Melabs of California, the manufacturer of the telephone, entered into a contract with the Marlin American Corporation pursuant to which Marlin undertook to distribute the Attache Telephone. During this time, SCM Corporation purchased the assets of Melabs of California and created a wholly-owned subsidiary, Melabs, Inc.
 
 
 4
 The agreement between Melabs and Marlin gave Marlin the exclusive right to market the Attache Phone in all but a few states, expressly providing that Marlin was an independent contractor and not an agent of Melabs. Melabs, as manufacturer, obligated itself to issue a standard electronic manufacturer's warranty and to provide service contractors and replacement parts in all territories covered by Marlin. Marlin obligated itself
 
 
 5
 to put forth its best efforts to establish a sales and marketing program throughout its territory on a basis that will realize the full sales potential of the area in the least possible time.
 
 Marlin was also obligated to
 
 6
 develop and be responsible for all brochures, sales aids, forms, advertising materials, mats, franchise presentations, etc., necessary in the sale of the product, both from the standpoint of the franchise sales as well as point of purchase or end user sales.
 
 
 7
 We shall describe other provisions of the agreement when pertinent to our discussion of the issues.
 
 
 8
 With the assistance of the Charles Friedlander Advertising Agency, Marlin established a franchising plan for marketing the Attache Phone nationwide. One of the results of the franchising plan was an advertisement in the Wall Street Journal in February 1969. The plaintiff's husband, William Oberlin, saw this advertisement, filled out the coupon, and sent it to Marlin. Marlin then sent Oberlin a letter informing him of a meeting at the Indianapolis Holiday Inn on June 12, 1969. Mr. Oberlin attended the meeting, during which a Marlin representative gave a slide presentation and distributed brochures praising the investment potential of an Attache Phone franchise. On the day following this presentation, William Oberlin read and signed a contract with Marlin as zone distributor of Attache Phones for central Indiana. On the same day Oberlin paid $28,000 to the Marlin representative, as required by the agreement. By November of 1969, Oberlin learned that Indiana Bell Telephone Company had no numbers available for these telephones and that sale of them without numbers was difficult, if not impossible, despite his vigorous efforts.
 
 
 9
 William Oberlin brought this diversity action against Marlin, Melabs, Inc., and SCM Corporation. Count I of the complaint charged that Marlin had fraudulently induced him to accept the distributorship. In the first count, the liability of SCM and Melabs was based on an alleged agency relationship between each of these defendants and Marlin. Count II alleged that Marlin breached the distributorship agreement with Oberlin. Count III alleged a conspiracy between the three defendants.
 
 
 10
 Prior to trial William Oberlin died on February 15, 1976, and his widow was substituted as plaintiff. The district court dismissed Marlin as a defendant prior to trial for lack of personal jurisdiction.[1] After the plaintiff presented her evidence against the remaining defendants to a jury, the district court directed the verdict.
 
 
 11
 The plaintiff argues on appeal that the evidence of an agency relationship between Marlin and the two defendants was sufficient to go to the jury[2] and that the trial court therefore erred in directing the verdict. The plaintiff also raises two evidentiary arguments. According to the plaintiff, the trial court erroneously excluded portions of William Oberlin's deposition and the deposition of a Marlin executive made during a different lawsuit in which Melabs was a defendant. We shall now consider the merits of these arguments.
 
 I. Sufficiency of the Evidence
 
 12
 The plaintiff sought to hold SCM and Melabs liable for Marlin's allegedly fraudulent conduct on the basis of an alleged principal-agent relationship between them. We hold that the trial court correctly directed the verdict against the plaintiff on this issue.[3]
 
 
 13
 When the district court directs a verdict, we test the correctness of the ruling by considering only the operative facts favorable to the plaintiff, disregarding conflicting unfavorable testimony, and drawing all inferences most strongly in her favor. Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720 (1930); Hohmann v. Packard Instrument Co., 471 F.2d 1132 (7th Cir. 1973); Kish v. Norfolk & Western Ry., 426 F.2d 815 (7th Cir. 1970).
 
 
 14
 As an initial matter we are giving no significance for the purpose of this appeal to the fact that the contract between Melabs and Marlin expressly designated Marlin as an independent contractor and stated that it was not an agent. We instead look at the evidence as to what the relationship was and not what the parties called it. While there probably is no hard and fast rule on the subject it appears generally that the status is determined by an examination of factors such as the extent of control exercised, whether this is just as to the result of the relationship or also as to the means of reaching the result, and the intent and functioning of the parties in their relationships with each other.
 
 
 15
 The plaintiff's brief emphasizes certain matters submitted in evidence as proof of an agency relationship between Marlin and the defendant Melabs sufficient to withstand a motion for directed verdict. The marketing agreement gave Melabs the right to approve all contract forms and established that uniform terms, conditions, and prices would be offered to ultimate distributors. The marketing agreement also transferred to Melabs the ownership of the distributorships established by Marlin in the event of Marlin's default or bankruptcy. Finally, the plaintiff offered evidence that, in practice, Melabs exercised approval rights over the use of the SCM trademark in advertising materials.
 
 
 16
 Manufacturers have exercised control over the pricing and contract forms of their distributors, and this practice has not affected the status of distributors as independent contractors. Smith v. Cities Service Oil Co., 346 F.2d 349 (7th Cir. 1965); Coe v. Esau, 377 P.2d 815 (Okla.1963); Hancock v. Minneapolis-Moline, Inc., 482 P.2d 426 (Colo.App.1971); Burkhalter v. Ford Motor Co., 29 Ga.App. 592, 116 S.E. 333 (1923); Seavey, Agency § 84, at 145. The provision in the agreement transferring ownership of the distributorships in the event of Marlin's bankruptcy or default applied only in extraordinary circumstances, and the control of advertising was confined to the discrete area of use of the SCM trademark. Neither the contract nor the evidence of the advertising practice demonstrates the elements of constancy or detail characteristic of the control a principal exercises over his agent. Western Adjustment & Inspection Co. v. Gross Income Tax Division, 236 Ind. 639, 142 N.E.2d 630 (1957); Gross Income Tax Division v. Fort Pitt Bridge Works, 227 Ind. 538, 86 N.E.2d 685 (1949).
 
 
 17
 Because Marlin used the SCM trademark in its advertising, the plaintiff argues that federal trademark law imposed upon SCM a duty to supervise Marlin's operations sufficient to create an agency relationship between SCM and Marlin. According to the plaintiff the source of this agency relationship is the Lanham Act, 15 U.S.C. §§ 1051 et seq.[4] The Lanham Act requires supervision of trademark licensees at the expense of abandonment of the trademark. The licensor must control the operations of its licensees to ensure that the trademark is not used to deceive the public as to the quality of the goods or services bearing the name. See Turner v. HMH Publishing Co., 380 F.2d 224 (5th Cir.), Cert. denied, 389 U.S. 1006, 88 S.Ct. 566, 19 L.Ed.2d 601 (1967); Dawn Donut Co. v. Hart's Food Stores, Inc., 267 F.2d 358 (2d Cir. 1959). The purpose of the Lanham Act, however, is to ensure the integrity of registered trademarks, not to create a federal law of agency. Furthermore, the scope of the duty of supervision associated with a registered trademark is commensurate with this narrow purpose. The duty does not give a licensor control over the day-to-day operations of a licensee beyond that necessary to ensure uniform quality of the product or service in question. It does not automatically saddle the licensor with the responsibilities under state law of a principal for his agent. Smith v. Cities Service Oil Co., 346 F.2d 349 (7th Cir. 1965); Murphy v. Holiday Inns, Inc., 216 Va. 490, 219 S.E.2d 874 (1975). See Drexel v. Union Prescription Centers, Inc., 428 F.Supp. 663 (E.D.Pa.1977); McLaughlin v. Chicken Delight, Inc., 164 Conn. 317, 321 A.2d 456 (1973); Coe v. Esau,377 P.2d 815 (Okla.1963); Arthur Murray, Inc. v. Smith, 124 Ga.App. 51, 183 S.E.2d 66 (1971). Cf. Thompson Farms, Inc. v. Corno Feed Products, Ind.App., 366 N.E.2d 3 (1977) (distributor mere "conduit" in promotional scheme devised by principal; direct contractual relationship between principal and ultimate purchaser).
 
 
 18
 We have already considered the evidence of control exercised by SCM and Melabs over Marlin and have found it insufficient to create a jury question as to the existence of an agency relationship. The use of SCM's licensed trademark does not affect our determination on this issue.[5]
 
 II. Evidentiary Issues
 
 19
 The plaintiff also argues that the trial court erroneously excluded certain evidence. Because we have determined that the trial court properly directed the verdict against the plaintiff on the basis of the record before it, we shall now consider whether evidence was erroneously excluded from the record upon which the decision was based, and, if so, whether the error was prejudicial.
 
 
 20
 The subject matter of one of the plaintiff's objections is the exclusion of excerpts of William Oberlin's deposition. This discovery deposition was taken by the defendants. The deposition also includes extensive cross-examination of Oberlin by his own attorney.
 
 
 21
 Specifically, the plaintiff first objects to the exclusion of this question, asked during the deposition by the defendant's attorney, and Oberlin's response:
 
 
 22
 Q. Did you understand from his (the Marlin representative) presentation (at the Holiday Inn) that the sales effort with respect to the telephone was made by the manufacturer of the telephone?
 
 
 23
 A. He led me to believe that, yes.
 
 
 24
 Applying Indiana law, See Swift & Co. v. Jamestown National Bank, 426 F.2d 1099, 1102 (8th Cir. 1970); Gallo v. Crocker, 321 F.2d 876, 877 (5th Cir. 1963), the trial court excluded this evidence of the extrajudicial statements of the Marlin representative because the extrajudicial statements of an agent not in the presence of the alleged principal are not admissible to prove the existence of an agency relationship. Pan American World Airways, Inc. v. Local Readers Service, Inc., 143 Ind.App. 370, 377, 240 N.E.2d 552, 556 (1968); Liberty Coach Co. v. Butts, 126 Ind.App. 515, 123, 132 N.E.2d 149, 152 (1956). To admit the agent's statement, there must be substantial independent evidence of the agency. See Phenix Insurance Co. v. Jacobs, 23 Ind.App. 509, 55 N.E. 778 (1899). For the reasons we have already discussed, the plaintiff has failed to submit any independent evidence of agency distinguishing the relationship at issue from an independent contractor relationship, and without more, the trial judge properly excluded this portion of the deposition from the jury's consideration.[6]
 
 
 25
 The trial court also excluded portions of the deposition containing the cross-examination of Oberlin by his own counsel. The cross-examination of Oberlin was by leading questions, but counsel for the defendant made no objection to the form of the questions during the deposition. Plaintiff argues and we agree that the use of leading questions during the cross-examination of a party by his own attorney, if it was objectionable, it was so at the time the deposition was taken, and the error might have been cured if an objection had then been stated. Under federal evidence law, no one has an absolute right to ask leading questions on cross-examination. Fed.R.Evid. 611(c); United States v. Bensinger Co., 430 F.2d 584 (8th Cir. 1970); Mitchell v. United States, 213 F.2d 951 (9th Cir. 1954), Cert. denied, 348 U.S. 912, 75 S.Ct. 290, 99 L.Ed. 715 (1955). Oberlin's testimony was "cross-examination in form only and not in fact, as for example the 'cross-examination' of a party by his own counsel after being called by the opponent (savoring more of redirect) . . . ." Advisory Committee's Note to Fed.R.Evid. 611(c). The defendant's failure to object to the form of question at the time of the deposition therefore waived this ground for objection at trial. Fed.R.Civ.P. 32(d)(3)(B); Elyria-Lorain Broadcasting Co. v. Lorain Journal Co., 298 F.2d 356 (6th Cir. 1961); Houser v. Snap-On Tools Corp.,202 F.Supp. 181 (D.C.Md.1962). The trial court properly did not sustain this objection by the defendant and admitted almost the entire cross-examination portion of the deposition as part of the plaintiff's case-in-chief.[7]
 
 
 26
 Despite the defendant's waiver of the objection to leading questions, the trial court excluded those leading questions and the responses in which the plaintiff's attorney referred to or assumed the existence of an agency relationship between SCM, Melabs, and Marlin. We hold that this exclusion was a proper exercise of the trial court's discretionary control over the mode of interrogating witnesses and presenting evidence under Fed.R.Evid. 611(a). United States v. Bender, 218 F.2d 869 (7th Cir.), Cert. denied, 349 U.S. 920, 75 S.Ct. 660, 99 L.Ed. 1253 (1955). The Federal Rules of Evidence recognize that the adversary system does not always ensure that trials will serve their purpose to determine the truth. The advocates carry the primary responsibility for the mode of proof, but Rule 611 entrusts to the trial court the ultimate authority to see that a trial accomplishes its fundamental truth-seeking purpose. See 3 Weinstein, Evidence P 611(01). The plaintiff's proof at trial of an agency relationship between Marlin and the defendants was meager. If William Oberlin had been alive at the time of the trial, the cross-examination memorialized in his deposition would almost certainly not have been admissible. That the plaintiff died and the deposition became admissible was unforeseeable to both parties, and the court in fairness could expect the plaintiff to have prepared a case for the jury independent of the fortuitously admissible leading examination of Oberlin by his own attorney. The few questions and responses excluded were conclusory and of little probative value. Their admission before the jury, however, may well have carried undue weight, because the questions excluded consisted of Oberlin's adoption of what was in effect his attorney's testimony on ultimate issues in the case. See Spartan Grain & Mill Co. v. Ayers, 517 F.2d 214, 217-18 (5th Cir. 1975).
 
 
 27
 We are not unmindful that attorneys often at the conclusion of the direct examination of their client in a discovery deposition desire to have the deposition include the favorable aspects of their own case. That may well have been the situation here. There can be no objection to the objective but attorneys in so doing will be well advised to bear in mind the uncertainties of life and that their presentation during the so-called cross-examination may be unavailable for use later if the client should die. Conversely, we also observe that the better practice would be for the deposition taker to state all objections during the course of taking of the deposition.
 
 
 28
 The plaintiff also objects to the exclusion of a deposition of Marshall Bethel, a former Marlin executive, made during another lawsuit in the State of California. Both Marlin and Melabs were defendants in that action. The theory of recovery in that action, however, was not based on agency or conspiracy. The plaintiff instead alleged separate fraudulent representations on the part of Melabs. The trial court in this action excluded the deposition in a preliminary ruling on the basis of Fed.R.Evid. 804(b)(1), apparently because the parties in the California action were different, but left the question open for reconsideration once the issues developed at trial. We hold that the exclusion was proper.
 
 
 29
 One of the prerequisites for admissibility of former testimony under Fed.R.Evid. 804(b)(1) is a similar motive to develop the testimony in the prior action. The plaintiff does not show us, and we have not found any specific testimony in Bethel's deposition tending to prove an agency relationship between Marlin and Melabs, which was the crucial issue in this trial. From this we conclude that the exclusion of the testimony, even if we assume arguendo that it was erroneous, was not prejudicial. Any testimony of this nature appearing in the deposition would not have been the subject of extensive cross-examination by Melabs, however, because Melabs was not being held to answer in the former action for Marlin's misrepresentations. We therefore hold that the lack of motivation on the part of Melabs to cross-examine on this issue made exclusion of this evidence proper. Fed.R.Evid. 804(b)(1). See Minyen v. American Home Insurance Co., 443 F.2d 788, 791 (10th Cir. 1971); Ikerd v. Lapworth, 435 F.2d 197, 205-06 (7th Cir. 1970).
 
 
 30
 For the reasons herein stated, the judgment of the district court is affirmed.
 
 
 
 [1]
 The plaintiff argues in her brief that the district court's dismissal of her action against Marlin for lack of personal jurisdiction was erroneous. Plaintiff served the Secretary of State of Indiana with a summons and complaint on June 9, 1971, directing that notice of the action be sent to Marlin in Florida by registered mail. The notice to Marlin was returned unopened and was marked "Return to Sender," with no indication that Marlin ever received the notice. The record also shows that Marlin was dissolved by the Florida Secretary of State on June 28, 1971, for tax delinquency
 On July 9, 1973, the defendants Melabs and SCM moved for a continuance. The motion described the plaintiff's unsuccessful efforts to serve Marlin, described in the motion as the "principal defendant," and advised the court that plaintiff's counsel had told these defendants that he did not intend to pursue further efforts to bring Marlin or its officers within the jurisdiction of the court. These defendants also indicated that they had undertaken bringing about service of process on Marlin. This apparently was crowned with no success. The motion for continuance was granted.
 Subsequently the plaintiff filed a Motion to Reinstate, asking that the action be placed on the trial calendar. The plaintiff did not deny that efforts to serve Marlin had been unsuccessful and in fact urged that future efforts to serve Marlin would be futile because Marlin was without assets. The plaintiff's position was that the absence of assets made it impossible for the former directors of Marlin to act as trustees with the power to defend lawsuits against the dissolved corporation, as provided in Florida Stat. § 608.30. The district court granted the plaintiff's motion and placed the action back on the calendar as to the two remaining defendants, Melabs, Inc. and SCM.
 From the record it appears that plaintiff abandoned below any argument that the district court had jurisdiction over Marlin. We therefore deem the issue improperly raised here and express no view on the merits of this issue. Fed.R.Civ.P. 46. See United States v. Sanchez, 422 F.2d 1198, 1201 (2d Cir. 1970).
 
 
 [2]
 The trial court also directed the verdict on the conspiracy count. The plaintiff has not asked us to examine the correctness of the trial court's decision, however, apparently conceding that the evidence was insufficient. The plaintiff reserved the right, however, if there were a new trial, to resubmit certain evidence of a conspiracy which the trial court ruled was inadmissible
 
 
 [3]
 Because we have decided that the trial court correctly directed the verdict, we do not consider the plaintiff's argument concerning evidence to establish damages
 
 
 [4]
 Section 1055 establishes the duty at issue here:
 Where a registered mark or a mark sought to be registered is or may be used legitimately by related companies, such use shall inure to the benefit of the registrant or applicant for registration, and such use shall not affect the validity of such mark or of its registration, provided such mark is not used in such manner as to deceive the public.
 
 
 [5]
 The plaintiff apparently also raises an agency by estoppel argument based on the use of the SCM trademark in the advertisement. This argument is also without merit. SCM and Melabs' obligations were expressly confined by the agreement between Marlin and Oberlin to those normally assumed by a manufacturer. Furthermore, the advertisement expressly described Melabs as producer of the product and Marlin as distributor. The facts here are in contrast with those in Sheraton Corporation of America v. Kingsford Packing Company, 162 Ind.App. 470, 319 N.E.2d 852 (1974), in which the defendant hotel corporation, the franchisor, was estopped to deny the debts of the operator of a local hotel, the franchisee of the Sheraton Corporation. In that case, however, Sheraton was found to have knowingly permitted its trade name to be used in the course of business by a separate entity without qualification or indication of separate ownership. Reliance was found to be reasonable and probable. That is not the situation in the present case
 
 
 [6]
 We add that even if this statement had been admitted in evidence, there would not have been enough evidence to support a verdict for the plaintiff and its exclusion therefore was not prejudicial. Further, Oberlin's statement is merely a conclusory description of his understanding of what the Marlin representative was saying; the exact content of the statements is not clear. For these reasons we conclude that even if there had been error in the trial court's ruling, it was harmless. Fed.R.Civ.P. 61; Hazeltine Research v. Avco Manufacturing Corp., 227 F.2d 137, 149 n. 20 (7th Cir. 1955), Cert. denied, 350 U.S. 987, 76 S.Ct. 474, 100 L.Ed. 854 (1956). Furthermore, the evidence was irrelevant to the plaintiff's estoppel theory of agency because it tended only to show reliance on representations of the alleged agent, not those of the principal. Storm v. Marsischke, 159 Ind.App. 136, 304 N.E.2d 840 (1973), Indiana Fibre Products Co. v. Cyclone Mfg. Co., 81 Ind.App. 682, 143 N.E. 169 (1924)
 
 
 [7]
 Fed.R.Evid. 804(b)(1) permits the use of the deposition in the plaintiff's case-in-chief. The test for admissibility is whether the opposing party had an opportunity and similar motive to develop the testimony by "Direct, cross, or redirect examination." (Emphasis added.) "Allowable techniques for dealing with hostile . . . witnesses leave no substance to a claim that one could not adequately develop his own witness at the former hearing." Advisory Committee's Note to Fed.R.Evid. 804