KOKOMO VETERANS, INC., V.F.W. George Ray Goudy Post 1152, Defendants-Appellants,

v.

Randy E. SCHICK, Plaintiff-Appellee.

No. 2–1281A419.

Court of Appeals of Indiana, Third District.

Aug. 26, 1982.

Rehearing Denied Oct. 25, 1982.

Frank E. Spencer, Indianapolis, for defendants-appellants.

J. Conrad Maugans, Bayliff, Harrigan, Cord, Maugans & Russell, P. C., Kokomo, for plaintiff-appellee.

HOFFMAN, Presiding Judge.

This appeal comes before the Court from a suit for specific performance brought to trial by the appellee Randy Schick to enforce a contract for the sale of property against the appellants V.F.W. George Ray Goudy Post 1152 (Post) and Kokomo Veterans, Inc. (Corporation). The appellants contend that there was insufficient evidence admitted at trial to support the court's finding that a contract existed and order of specific performance of that contract. In support of this contention appellants posit several allegations of error.

The facts in a light most favorable to the trial court's determination are recited below:

In March 1979 Mrs. Inman, a realtor for Shelton Realty, contacted Post through its representatives regarding the sale of property currently used as its meeting hall. The Post listed the property with Shelton Realty with a list price of $50,000. One offer was received for the property and rejected during the first listing period. A second listing agreement was signed with Shelton Realty soon after the first agreement expired. The first listing agreement was signed by Ralph Williams, the second by Larry Davis. When the second listing agreement was signed, Shelton Realty was informed that any trustee of the Post was authorized to sell the property.

On June 21, 1979 Schick offered the Post $37,500 for the property. The Post extended a counter-offer signed by Williams, Davis, and Albert Colburn, trustees for the Post. Shelton Realty was again informed that any trustee was authorized to sell the property. At this time neither Schick nor Shelton Realty had any knowledge of the existence of the Corporation.

On July 2, 1979 Schick made another offer to buy the property for $37,500 contingent upon his ability to find financing. As before, the Post made a counter-offer signed by Williams, Davis, and Colburn. Upon being unable to obtain financing, Schick made a counter-offer to purchase the property in a contract sale agreement for $37,500. A counter-offer signed by Williams and Davis agreeing to the contract sale and adding specific terms was accepted and signed by Schick on August 29, 1979.

After the contract was entered into on August 29, the parties were informed that title to the property was held by the Corporation, not by the Post. Subsequently on September 27, 1979 the Officers of the Board of Directors of the Corporation, some of whom were also trustees for the Post, signed a document authorizing the sale of the property as agreed. Schick was given an abstract for the property paid for by the Post and ordered a survey which was to be paid for by the Post. Schick then began work on the property enlisting the aid of contractors and architects and refinanced his home to obtain working capital.

In mid-October after Schick had begun work, he was informed that the contract would have to be "taken to the floor" for approval by the general membership of the Post before it became binding. Floor approval had been obtained after the first offer in June and neither Schick nor Shelton Realty was informed that floor approval would be needed subsequently. The contract entered into by Schick, representatives of the Post, and the Board of Directors of the Corporation did not gain floor approval.

Schick was never given possession of the property and brought suit for specific performance of the contract. The court ordered specific performance of the contract and awarded damages to Schick. This appeal resulted.

The appellants Post and Corporation present several issues for review which have been consolidated and reorganized.

(1) whether there is sufficient evidence to support the trial court's finding that an offer was accepted by persons authorized to enter a binding agreement to sell the property in question;

(2) whether there is sufficient evidence to support the trial court's finding that an enforceable contract existed; and

(3) whether there is sufficient evidence to support the trial court's finding that owner was obligated to perform under the contract since certain conditions precedent had not been met.

■ As a general rule the interpretation of the construction or legal effect of a contract is a question of law to be determined by the court. *U.S.F. & G. Co. v. Baugh* (1970), 146 Ind.App. 583, 257 N.E.2d 699. However, the facts which serve as a basis for that interpretation must be determined by the trier of fact. *Portland Body Works v. McCullough, etc., Co.* (1918), 72 Ind.App. 216, 119 N.E. 180. Therefore, the question before the trial court in the case at bar is one of mixed law and fact.

■ The trial court's judgment comes before us clothed in a presumption of correctness, and the appellant has the burden of proving error. *Jones et al. v. First Nat. Bank, Adm.* (1968), 143 Ind.App. 243, 239 N.E.2d 398. When reviewing the findings of a trial court to determine whether they are supported by sufficient evidence, this Court does not reweigh the evidence nor rejudge the credibility of the witnesses. The determination of the trial court will be affirmed unless the evidence viewed in a light most favorable to the trial court leads uncontrovertibly to a conclusion opposite the one reached. *Indiana Broadcasting Corp. v. Star Stations* (1979), Ind.App., 388 N.E.2d 568, *citing Jos. Schlitz Brewing Co. v. Central Beverage* (1977), 172 Ind.App. 81, 359 N.E.2d 566.

Appellants first attack the trial court's finding that a contract existed on the ground that the parties who signed the documents were not authorized by the Post members or Corporation to enter a binding agreement for the sale of the property.

■ Indiana courts have recognized cases where it is necessary to disregard the existence of a corporation as a separate entity where such recognition would result in fraud or injustice to innocent third parties transacting business with representatives of the corporation. *Clarke Auto Co., Inc. v. Fyffe, etc.* (1954), 124 Ind.App. 222, 116 N.E.2d 532. As a general rule a principal may be liable for the acts of his agent when he cloaks that agent with apparent authority and nothing in the transaction would put a third party on notice that the agent is acting beyond the scope of his actual authority. *Indiana Fibre Products Co. v. Cyclone Mfg. Co.* (1924), 81 Ind.App. 682, 143 N.E. 169.

■ The doctrine involved in these cases, equitable estoppel or estoppel *in pais*, requires proof of several elements. Party A must have made false representations or concealed material facts while having knowledge of the true state of facts or the ability to obtain that knowledge. The representations must have been made to party B, with the intent to induce B's reliance on those statements. Finally, B must have changed his position in reliance upon A's statements. *Justice et al. v. Mid-State Homes* (1970), 146 Ind.App. 662, 257 N.E.2d 843; *Schill v. Choate* (1969), 144 Ind.App. 543, 247 N.E.2d 688; *ITT Cannon Elec., Inc. v. Brady* (1967), 141 Ind.App. 506, 230 N.E.2d 114.

■ The courts may find fraud where there was no actual intent to defraud the third party, but law requires a finding of constructive fraud to prevent an injustice or inequity that would result from the party's misrepresentation. *Hoosier Insurance Co. v. Ogle* (1971), 150 Ind.App. 590, 276 N.E.2d 876, *citing Marcum v. Richmond Auto Parts Co.* (1971), 149 Ind.App. 120, 270 N.E.2d 884. The courts have made it clear that representations of fact intended to be actionable also includes conduct. Conduct in this sense is construed broadly and includes silence where there is a duty to speak. Under this doctrine conduct is actionable where it would result in an unconscionable or unfair burden if sanctioned. Determining the existence of actionable conduct is a question for the trier of fact. *Lawshe v. Glen Park Lbr. Co., Inc.* (1978), Ind.App., 375 N.E.2d 275; *Sheraton Corp. et al. v. Kingsford Pack* (1974), 162 Ind.App. 470, 319 N.E.2d 852.

It is important to note that courts are reluctant to base their decisions on equitable estoppel in cases involving title to property as it would "greatly tend to the insecurity of title if they were allowed to be affected by parol evidence of light or doubtful character." *Williams v. Ketcham* (1906), 37 Ind.App. 506, at 515, 77 N.E.2d 285, at 288.

In the case at bar the character of the evidence is much more than light or doubtful; in fact, it appears overwhelming. Schick was involved in negotiations with representatives of the Post for over three months. During this time nothing was mentioned about a Corporation or the fact that the Corporation held title to the property and not the Post. The representatives made express assurances that they were authorized to sell the property. The Post members had knowledge of the negotiations and at one point approved the sale of the property. At no time thereafter did members of the Post allege that the representatives were acting beyond their authority. Once it was learned that the Corporation held title to the property, its Board of Directors authorized the sale, ratifying the acts of the Post's representatives. In fact, several of the members of the Corporation's Board of Directors were also trustees of the Post that had taken part in the negotiations.

Schick, relying upon the representations of authority made by the other parties, did in fact change his position by employing contractors and architects, and refinancing his home. It was not until after the Post learned that interest rates would prevent it from obtaining new headquarters that problems arose. The Post then refused to honor the contract claiming it lacked the necessary floor approval. Clearly this is the classic situation that equitable estoppel was designed to redress. The appellants should not be allowed to hide behind a series of walls designed to thwart Schick's efforts to obtain property that they induced him to purchase. The facts indicate that the appellants are claiming floor approval was needed because rising interest rates have rendered their bargain disadvantageous to them. The trial court properly found the appellants estopped from denying that their representatives were authorized to enter a binding contract for the sale of the property in question.

The appellants next attack the trial court's finding that an enforceable contract existed on the grounds that it lacked mutuality, had not been accepted, and if in fact accepted, constituted only an agreement to enter into an agreement, which is not enforceable by an order of specific performance.

Indiana law clearly establishes that in order for a contract to exist there must be an offer and acceptance of that offer which meets and does not go beyond the terms of the offer. *Uniroyal, Inc. v. Chambers Gasket & Mfg. Co.* (1978), Ind. App., 380 N.E.2d 571; *Gerardot v. Emenhiser* (1977), 173 Ind.App. 353, 363 N.E.2d 1072. An acceptance which varies in terms from the offer is considered a rejection which amounts to a counter-offer that must be accepted by the original offeror in order to form a contract. *Uniroyal, Inc. v. Chambers Gasket & Mfg. Co., supra.*

It appears from the facts in the case at bar that the parties engaged in a process of negotiation that involved a series of offers and counter-offers from June through August. In August, however, the negotiation process came to an end when Schick accepted and signed the counter-offer issued and signed by the representatives of the Post. A contract was formed at that time consisting of the terms contained within the counter-offer and terms of the offer recognized within the counter-offer.

This is only the first step of our analysis since the mere existence of a contract does not mean it is enforceable. In order to be enforceable a contract must be reasonably definite in its material terms so that the intention of the parties may be ascertained. *Wallace v. Mertz, Admr.* (1927), 86 Ind.App. 185, 156 N.E. 562. In addition the contract must embody that legal essence known as mutuality. Mutuality

involves the concept of correlative enforceable obligations imposed on the parties to a contract so that both are bound by the terms of the contract. *See* Black's Law Dictionary 920 (5th Ed. 1979).

 The existence of a condition precedent does not by itself destroy mutuality merely because a contract is unenforceable at the time it is signed since the contract will ripen into a mutually enforceable obligation upon performance of the condition. *Obering v. Swain-Roach Lumber Co.* (1927), 86 Ind.App. 632, 155 N.E. 712. Further, mutuality does not require that every duty within a contract be based upon a correlative obligation outlined in minute detail. A contract need only be reasonably definite and binding as to its material terms. *Zeyher v. S. S. & S. Manufacturing Co.* (7th Cir. 1963) 319 F.2d 606; *Jordan v. Indianapolis Water Co.* (1902), 159 Ind. 337, 64 N.E. 680.

 When construing a contract, Indiana courts will not find lack of mutuality or uncertainty where a reasonable and logical interpretation will render the contract valid and enforceable. *Prell v. Trustees of Baird & Warner Mortg.* (1979), Ind.App., 386 N.E.2d 1221.

 In the case at bar there was ample evidence to support the trial court's finding that a contract was accepted and was reasonably definite enough to be enforceable. The evidence established that terms of payment, lease-back, retention of certain personal property, date of closing and possession, payment of utilities and taxes, and burden of expense involved in obtaining merchantable title were established with clarity. The intention of the parties could be ascertained by the court with relative ease. The terms of the contract did create mutual obligations upon the parties which are common in transactions involving the sale of property.

 In order to conclude that the contract obligation placed on the appellants was enforceable, however, we must proceed further and discuss the condition precedents included in the contract. A condition prece-

dent may be a condition which must be satisfied before an agreement becomes enforceable or it may be a condition which must be fulfilled before the duty to perform an already existing contract arises. *Blakley v. Currence* (1977), 172 Ind.App. 668, 361 N.E.2d 921.

 As stated above, a condition precedent does not destroy mutuality since once a condition is fulfilled mutuality of obligation exists. *Obering v. Swain-Rosch Lumber Co., supra.* However, a party may not rely on the failure of a condition precedent to excuse performance where that party's action or inaction caused the condition to be unfulfilled. *Billman v. Hensel* (1979), Ind.App., 391 N.E.2d 671. Similarly the party to whom the benefit of a provision within a contract or a condition precedent inures may waive the condition or provision and the contract will remain enforceable. *Koedding v. Slaughter* (8th Cir. 1980) 634 F.2d 1095; *Nelson v. Cannon* (1980) 126 Ariz. 381, 616 P.2d 56; *Lanna v. Greene* (1978) 175 Conn. 453, 399 A.2d 837; *Lempera v. Karner* (1979) 79 Ill.App.3d 221, 34 Ill.Dec. 549, 398 N.E.2d 224; *Mosebach v. Blythe* (1979) Iowa App., 282 N.W.2d 755; *Leavitt v. Fowler* (1978) 118 N.H. 541, 391 A.2d 876; *Braugh v. Phillips* (1977) Tex. App., 557 S.W.2d 155.

 In the case at bar the appellants allege that since two conditions precedent, (1) the five ton air conditioner in the building is to be working at date of closing and (2) Schick will obtain a change of use permit for the building, have not been fulfilled the contract is unenforceable. While it is clear from the evidence that these two conditions have not been satisfied, it is equally clear in the law that this fulfillment is not necessary under the circumstances to render the contract enforceable for two reasons. First, the appellants had the obligation to repair the air conditioning and have it working by the closing date. The appellants' failure to perform their obligation pursuant to a condition does not then serve as a ground rendering the contract unenforceable because a condition precedent has

not been fulfilled. Second, both conditions solely benefit Schick, and he is free to waive those benefits without affecting the enforceability of the remaining material contract terms.

For the reasons stated above there is ample evidence to support the trial court's interpretation of the contract and findings based on that interpretation. The trial court acted properly in ordering specific performance of the contract and its findings are affirmed.

Affirmed.

GARRARD and STATON, JJ., concur.